UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAYON KING,

               Plaintiff,

v.

AARON RUTGERS, *et al.*,

               Defendants.

_____/

Case No. 1:14-cv-1019

Hon. Gordon J. Quist

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought by a state prisoner in the custody of the Michigan Department of Corrections (MDOC) pursuant to 42 U.S.C. § 1983. This matter is now before the Court on defendants' motion for summary judgment (docket no. 74).

### I.      Background

In his second amended complaint, plaintiff sued six corrections officers (COs) at Ionia Correctional Facility (ICF): Aaron Rutgers; Maxwell Martin; Jared McConkey; Kevin Zwiker; J. Page; and Roy Betterly. *See* Second Amended Complaint (docket no. 64). Plaintiff's allegations can be summarized as follows. In August 2013, plaintiff was sent to segregation for attempting to write a grievance against CO Rutgers and CO Martin "for closing off an opening to his cell, thereby causing the cell to overheat and aggravating [p]laintiff's health conditions." *Id.* at PageID.172. When he was released from segregation, Rutgers and Martin called plaintiff a snitch and threatened his life. *Id.* At some later time, plaintiff wrote another grievance against CO Rutgers. *Id.* at PageID.173. When other officers found out about the grievance, plaintiff's cell was trashed, he was called a snitch and a rat, his grievance was destroyed, and he "was issued an unsubstantiated

misconduct ticket." *Id.* Plaintiff did not identify any of the other officers involved or when the events occurred. *Id.* Plaintiff wrote another grievance for retaliation "which was thrown away." *Id.* He did not identify the person named in the grievance or who threw it away. *Id.*

On August 23, 2013, plaintiff filed a *pro se* civil rights lawsuit against various ICF employees, including CO Rutgers. *Id.* On or about September 10, 2013, Rutgers learned that plaintiff had written a grievance against him. *Id.* Rutgers told plaintiff that he was going to the hole (segregation) because he would not dismiss the grievance. *Id.* "Defendant Rutgers subsequently wrote a false misconduct ticket that resulted in [p]laintiff being transferred to segregation through a forced cell extraction." *Id.* The cell extraction occurred on September 10, 2013. *Id.* at PageID.173-178, 182. COs Zwiker, Betterly, McConkey, Page and Martin were members of the cell extraction team. *Id.* at PageID.174. At the time of the extraction, plaintiff tried to comply with Zwiker's order to the come to the door, but Zwiker discharged two gas canisters into plaintiff's cell which caused him great physical distress. *Id.* at PageID.174-175. After his extraction plaintiff was placed in a cell in the segregation unit. *Id.* at PageID.178. Plaintiff alleged that he sustained wounds to his face and shoulder during the cell extraction. *Id.*

On or about September 14, 2013, CO Zwiker brought plaintiff a quartermaster form to order clothing. *Id.* From approximately September 14, 2013 through September 18, 2013, plaintiff was denied multiple food trays "while hogtied and left in his underwear in his cell." *Id.* at PageID.179. Plaintiff wrote multiple letters to acting warden Cathleen Stoddard and Deputy Warden Huss indicating that he did not feel safe due to defendants' behavior. *Id.* Among other things, plaintiff alleged that in addition to these acts of retaliation, he was "denied showers and yard time

for months at a time, throughout the Fall and Winter of 2013-2014," that he wrote multiple grievances about these denials, "most of which were not processed by [d]efendants." *Id.*

The second amended complaint alleged two causes of action. In Count I, plaintiff alleged that on various occasions, all defendants retaliated against him in violation of his First Amendment rights. In Count II, plaintiff alleged that defendants Zwiker, McConkey, Martin, Page and Betterly used excessive force in violation of his Eighth Amendment rights when they assaulted him physically and with a chemical agent on September 10, 2013. Plaintiff seeks compensatory and punitive damages.

## II.    Defendants' motion for summary judgment

### A.    Legal standard

Defendants have moved for summary judgment because plaintiff failed to exhaust any grievances with respect to his claims. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B.      Failure to Exhaust

### 1.      Exhaustion requirement

The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).  A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741.  One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court.  This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

"Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2.     MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007).  A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control.  *Id.* at ¶ P.  If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff.  *Id.* at ¶¶ P and R.  The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely.  Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original).  The prisoner must send the Step I grievance to the appropriate grievance coordinator.  *Id.* at ¶ V.  If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator.  *Id.* at ¶ BB.  Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section.  *Id.* at ¶ FF.

### 3.     Discussion

Defendants point out that plaintiff did not properly exhaust any of the claims alleged in the lawsuit.  In his affidavit, Robert W. Farr, Grievance Specialist in the MDOC's Office of Legal Affairs, stated that he reviewed plaintiff's Step III grievance report from September 10, 2013

through November 30, 2015, and identified five grievances which plaintiff exhausted through Step III, i.e., ICF 13-10-2014-28e, ICF 13-10-2072-28e, ICF 14-03-0524-17c, ICF 14-05-0942-27z, and ICF 14-05-1065-27z.  *See* Farr Aff. (docket no. 75-2, PageID.222-224).  However, Mr. Farr pointed out that none of those grievances involved the matters alleged against defendants here.  *Id.*

Plaintiff does not contend that he properly exhausted his claims against defendants under the MDOC's grievance procedure.  Rather, plaintiff opposes the motion for summary judgment on the ground that he was prevented from filing grievances or exhausting his administrative remedies.  *See, e.g., Surles v. Andison*, 678 F.3d 452, 457-58 (6th Cir. 2012) (reversing district court's grant of summary judgment on the issue of exhaustion where "a dispute of material fact exists as to whether [d]efendants or other MDOC employees prevented [the plaintiff prisoner] from filing grievances and exhausting his administrative remedies").

While plaintiff contends that he made affirmative efforts to exhaust remedies,  *see* Response (docket no. 77, PageID.264), he provides little information on the actual affirmative efforts which he took.  For example, at his deposition, plaintiff testified that while in segregation, he attempted to grieve CO Rutgers' alleged retaliatory misconduct ticket "numerous times" after he went to segregation, but the grievances "never made it."  King Dep. (docket no. 77-4, PageID.290). Plaintiff also testified that three corrections officers, Eyer, Sisson and Wellman told plaintiff that his grievances "would be interfered with."  *Id.* at PageID.293.  Plaintiff's testimony, in and of itself, is insufficient to demonstrate that he undertook any particular "affirmative effort" to file a grievance with respect to any of the claims raised in this action.

However, plaintiff also submitted copies of Step I grievances which indicate that he tried to file grievances related to the incidents which occurred on September 10, 2013 and

6

September 14, 2013.  In grievance no. ICF 1309-1818-11g ("1818") dated September 19, 2013, plaintiff claimed that the grievance coordinator was destroying grievances.  *See* Grievance 1818 (docket no. 77-8, PageID.328).  In grievance no. ICF 1311-2142-28c ("2142") dated November 4, 2013, plaintiff complained that non-party CO Wellman was destroying grievances.  *See* Grievance 2142 (docket no. 77-9, PageID.330-331).  Finally, in grievance no. ICF 1401-0086-28E ("86"), dated January 10, 2014, plaintiff complained that the grievance coordinator did not process grievances related to an incident date of September 10, 2013. *See* Grievance 86 (docket no. 77-10, PageID.333).  In Grievance 86, plaintiff stated that he filed grievances on September 14, 2013, September 27, 2013, October 13, 2013 and November 20, 2013.  *Id.*  Defendants did not file a reply to address plaintiff's claim that he made affirmative efforts to file grievances.

When a prisoner makes affirmative efforts to comply with the administrative grievance process but does not succeed, the Court performs an analysis of whether those efforts to exhaust were sufficient under the circumstances.  *Peterson v. Cooper*, 463 Fed. Appx. 528, 530 (6th Cir. 2012), citing *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011).  Viewing the evidence in the light most favorable to plaintiff, there is no evidence that plaintiff properly exhausted grievances related to any of his claims.  *See Jones,* 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91.  However, there is some evidence to support plaintiff's claim that he attempted to file grievances for alleged conduct which occurred after he was placed in segregation on September 10, 2013.  *See Peterson*, 463 Fed. Appx. at 530.  Genuine issues of material fact exist as to whether plaintiff made sufficient affirmative efforts to comply with the administrative grievance process with respect to three claims which arose on or after that date: (1) that CO Rutgers issued a retaliatory misconduct ticket on September 10, 2013; (2) that COs Zwiker, Betterly, McConkey, Page and Martin used excessive

force during the September 10, 2013 cell extraction; and, (3) that all defendants retaliated against plaintiff from September 14, 2013 through September 18, 2013.  Accordingly, defendants' motion for summary judgment should be denied as to these three claims, and granted in all other respects.

## IV.   Recommendation

For these reasons, I respectfully recommend that defendants' motion for summary judgment (docket no. 74) be **DENIED** with respect to:  (1) plaintiff's claim that defendant Rutgers retaliated against him by issuing a misconduct ticket on September 10, 2013; (2) plaintiff's claim that defendants Zwiker, Betterly, McConkey, Page and Martin used excessive force during the September 10, 2013 cell extraction; and, (3) plaintiff's claim that all defendants retaliated against him from September 14, 2013 through September 18, 2013.

I further recommend that defendants' motion be **GRANTED** in all other respects.


Dated:  April 5, 2016                        /s/ Ray Kent_____
                                             RAY KENT
                                             United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).